UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

MOSES RAMBARRAN and ROHAN
RAMBARAN, on behalf of themselves and all
others similarly situated,

                                   Plaintiffs,

                    -v-

DYNAMIC AIRWAYS, LLC,

                               Defendant.

------------------------------------------------------------- X

|  |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: July 27, 2015 |

14-cv-10138 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      This putative class action was commenced on December 29, 2014, and

reassigned to the undersigned on February 27, 2015.  Plaintiffs Moses V.

Rambarran and Rohan Rambaran ("plaintiffs") allege that they purchased round-

trip tickets for a December 23, 2014 flight from New York to Guyana—and that

defendant Dynamic Airways, LLC ("Dynamic Airways" or "Dynamic") unreasonably

delayed this and other New York–Guyana flights, in violation of Article 19 of the

Montreal Convention.  See Convention for the Unification of Certain Rules for

International Carriage by Air ("Convention") art. 19, May 28, 1999, reprinted in S.

Treaty Doc. No. 106-45, 1999 WL 33292734 (2000).  Plaintiffs seek damages

pursuant to Article 22 of the Montreal Convention.[1]

---

[1] While the Complaint also states that "[t]his class action seeks a mandatory injunction requiring the immediate refund of all passengers who have requested refunds" (Compl. ¶ 1), plaintiffs withdrew their motion for a preliminary injunction based on Dynamic's representation that all passengers have received refunds.  (See ECF No. 9; Plaintiffs' Memorandum of Law in Support of Class Certification, Appointment of Plaintiffs as Class Representations, and Donald J. Schutz, Esq., Class Counsel ("Pls.' Br.") at 3, ECF No. 28; Declaration of Moses V. Rambarran ("Rambarran Decl.") ¶¶ 8, 12(a), ECF No. 28-1.)  There is no indication that plaintiffs are currently pursuing injunctive relief.

On April 29, 2015, plaintiffs filed a motion for class certification, seeking to certify two classes of passengers who experienced delays on New York–Guyana flights operated by Dynamic.  (ECF No. 27.)  Defendant opposed the motion on June 8, 2015.  On June 19, 2015, plaintiffs filed a reply—along with a motion to compel discovery.[2]

For the reasons set forth below, class certification must be denied on the record before the Court.  On a motion for class certification, plaintiffs bear an evidentiary burden of demonstrating that each Rule 23 requirement is satisfied. Here, plaintiffs have plainly failed to carry this burden.  This failure is most pronounced with respect to the typicality and predominance requirements: plaintiffs have not presented any evidence indicating that these requirements are met.  Faced with an opposition that correctly states that such failure requires denial of the class certification motion, plaintiffs made an eleventh-hour, 59-minute motion to compel discovery.  This motion to compel came too late; the Court will not extend all class certification deadlines at this juncture to allow plaintiffs to assemble the requisite factual record in response to defendant's opposition.  To do so would be unfairly prejudicial to defendant, inefficient for all concerned, and a tremendous waste of judicial resources.

---

[2] The Court notes that plaintiffs raised discovery issues in a letter dated April 9, 2015 (ECF No. 17). This letter was filed in response to Dynamic's April 8, 2015 motion to allow the withdrawal of its attorneys.  Defendant did not respond to plaintiffs' arguments relating to discovery—and plaintiffs did not renew them until May 25, 2015, a month after filing the motion for class certification.  On May 25, 2015, plaintiffs filed a motion to compel discovery but withdrew it the next day.  (ECF Nos. 31, 32.)

In any event, this is an unusual case where failure to satisfy the adequacy requirement provides an independent basis to deny class certification. The proposed class counsel, Mr. Donald J. Schutz, lacks the qualifications to litigate this case as a class action. Counsel used an incorrect legal standard on the motion, failed to recognize plaintiffs' burden and that this burden is distinct from and unrelated to any burden under the Montreal Convention, failed to assemble the minimal factual record necessary to demonstrate that the requirements of Rule 23 are satisfied, and failed to assemble from his own clients necessary factual materials or to timely file a motion to compel discovery or seek an extension of the class certification briefing schedule based on the need to obtain additional evidence. These failures plainly demonstrate counsel's inability to adequately serve as class counsel.

## I.   BACKGROUND

In support of their motion for class certification, plaintiffs submitted the Declaration of Moses V. Rambarran (the "Rambarran Declaration")—in which plaintiff Rambarran summarily affirms that he has read the Complaint and that "[t]he factual allegations of Paragraphs 1, 4, 5, and 9-46, and 48-50 are true and correct." (Rambarran Decl. ¶ 3.) Attached to the Rambarran Declaration are several Internet articles whose factual statements plaintiff Rambarran has not "personally investigated" (Rambarran Decl. ¶ 5, ECF Nos. 28-2–28-6), a printout from Dynamic's website (ECF No. 28-7), press releases about the instant case (ECF No. 28-8), a letter from Dynamic to the U.S. Department of Transportation (ECF

No. 28-9), and a Declaration of Donald J. Schutz, Attorney at Law, in Support of Motion to Appoint Class Counsel ("Schutz Decl.") (ECF No. 28-10).

The facts as alleged in the Complaint and set forth in the Rambarran Declaration are as follows:  In November 2014, Dynamic announced the inception of direct airline service from New York's John F. Kennedy airport ("JFK") to Georgetown, Guyana ("Guyana").  (Compl. ¶ 1, ECF No. 1.)  Plaintiffs purchased tickets for a round-trip Dynamic Airways flight from New York to Guyana, Flight No. 2D-0401 (HK), scheduled for check-in on December 22, 2014, at 10 p.m., and departure on December 23, 2014, at 1 a.m. (the "Flight" or the "December 23, 2014 flight").  (Compl. ¶¶ 1, 10; see also Rambarran Decl. ¶ 3.)  Plaintiffs allege that upon arrival at JFK, they "learned that hundreds of people who had purchased tickets from Dynamic Airways for travel to Guyana had been waiting at JFK for days." (Compl. ¶ 1; see also id. ¶¶ 11, 13.)  Plaintiffs "immediately witnessed an estimated 500 people on the check in line."  (Compl. ¶ 11.)  Dynamic's representatives allegedly informed plaintiffs that the Flight was cancelled and that they should return to the airport the following day, December 23, 2014, for a 7 p.m. departure. (Compl. ¶¶ 1, 14; see also Rambarran Decl. ¶ 3.)

Plaintiffs—"along with hundreds of other passengers"—returned on December 23, 2014.  (Compl. ¶ 1.)  Plaintiffs "witnessed approximately 500 to 700 passengers awaiting check in."  (Id. ¶ 16; see also Rambarran Decl. ¶ 3.)  According to the Rambarran Declaration, between 100 and 200 passengers accompanied plaintiff Rambarran to Gate 1 to board the Flight.  (See Rambarran Decl. ¶ 3.)

Between approximately 3 p.m. and 2 a.m., Dynamic's representatives "continued to promise a departure." (Compl. ¶ 1.)  Following general announcements that the flight was experiencing issues (id. ¶¶ 31, 33), the passengers were informed that "a monitor was not working on the plane" and that one had been ordered from American Airlines and would arrive shortly (id. ¶ 35).  At approximately 2 a.m., the "passengers were finally told that the flight would not depart." (Compl. ¶ 1; see also id. ¶ 26, Rambarran Decl. ¶ 3.)

Plaintiff Moses V. Rambarran asserts that he has "received communications from many passengers supporting this class action." (Rambarran Decl. ¶ 9.)  He recites two such communications in his Declaration. (Id. ¶¶ 9-10.)

Plaintiffs seek to certify two proposed classes:

> **Class One**: All persons who purchased and held reservations for round-trip tickets from New York's JFK Airport to Guyana on Dynamic Airways Flight 2D-0401, also referred to as Flight 0402, with the outbound trip scheduled for check in on December 22, 2014 [at] 10:00 p.m., with departure [from] New York on December 23rd, 2014, at 1:00 A.M., and any return flight from Guyana to New York.
>
> **Class Two**: All persons who had purchased round-trip tickets from New York's JFK Airport to Guyana on any Dynamic Airways, with the outbound trip scheduled for check in and departure from New York's JFK Airport on any day in December, 2014, where the flight was delayed from scheduled departure by at least three hours.

(Pls.' Br. at 8.)

Plaintiffs submitted no additional factual materials in support of their class certification motion.

In opposition to plaintiffs' motion, Dynamic has submitted a sworn declaration by Raveena Persaud ("Persaud")—Dynamic's Station Manager—

describing the circumstances surrounding the delay of the December 23, 2014 flight. (ECF No. 34.)  The Persaud Declaration states as follows:  The aircraft that was designated for the Flight arrived from Guyana—and, upon arrival, was connected to a ground power unit ("GPU") in accordance with standard procedure.  (Declaration of Raveena Persaud in Support of Defendant Dynamic Airways LLC's Opposition to Plaintiffs' Motion for Class Certification ("Persaud Decl.") ¶¶ 6-7, ECF No. 34.)  An electrical surge occurred within the GPU and "caused damage to certain flight controls and the main monitors of the aircraft, which were required to be repaired before the flight departed to Guyana."  (Id. ¶ 7.)  "Repairs were immediately made" but "were more extensive than anticipated and resulted in [Dynamic's] inability to fly the aircraft out of JFK on December 23."  (Id. ¶ 9.)  Dynamic informed the passengers that the flight would be cancelled.  (Id. ¶ 11.)

According to Persaud, "[d]ue to the late hour of the cancellation, as well as the fact that it was two days before the Christmas holiday, no other aircrafts were immediately available" (id.)—but Dynamic rebooked some of the delayed passengers on a Swift Air flight the next morning (id. ¶ 12).  Persaud also states that Dynamic's gate agents "addressed individual passenger needs, providing flight vouchers for passengers who chose to rebook with another carrier, hotel vouchers for passengers who were not local to the area, meal coupons and, in some instances, cab fare for certain elderly passengers who requested transportation home until the new flight information was announced."  (Id. ¶ 13.)

Defendant has also presented a number of facts relating to plaintiff Moses V. Rambarran, one of the two named plaintiffs in this action.  According to Persaud, while Dynamic attempted to accommodate passengers experiencing delay, plaintiff Rambarran "began to verbally threaten the gate agents in a loud and abusive manner"—and stated, "I'm a big time U.S. lawyer and we're going to sue the hell out of Dynamic and make sure they never fly to this country again."  (Id. ¶¶ 14, 15.)  Persaud states that Rambarran created such chaos that the Port Authority Police were called.  (Id. ¶ 16.)[3]  Defendant has also represented—and plaintiffs do not dispute—that Rambarran is an attorney who has been disbarred from practicing law in New York for having mismanaged client escrow funds—and who has pled guilty to the felony of concealing a person from arrest.

## II.   LEGAL STANDARDS

### A.    Class Certification

The Supreme Court has made clear that "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)).  A plaintiff seeking certification of a class must prove by a preponderance of the evidence that its proposed class meets the requirements of Rule 23(a) and, if those requirements are met, that the class is maintainable under at least one of the subdivisions of Rule 23(b).  See id. at 2548; Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d

---

[3] Rambarran denies these allegations and, in addition, states that he is unaware of any effort on the part of Dynamic to rebook or otherwise assist passengers.  (See Declaration of Moses V. Rambarran ("Rambarran Reply Decl.") ¶¶ 4-7, ECF No. 37-1.)

196, 202 (2d Cir. 2008).  Here, plaintiffs allege that they have met the requirements of two subsections of Rule 23(b)—23(b)(3) and 23(b)(1)(A).

> Rule 23(a) provides that class certification may be appropriate if:
>
>> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Rule 23(b)(3) allows certification if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see also Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015).

Rule 23(b)(1)(A) allows certification if "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).

Rule 23 is not a mere pleading standard.  Dukes, 131 S. Ct. at 2551. Plaintiffs bear the burden of affirmatively showing that each element of Rule 23 is satisfied.  See id. ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or

8

fact, etc."). In making a determination as to whether class certification is appropriate, the district court must receive enough evidence—by affidavits, documents, or testimony—to be satisfied by a preponderance of the evidence that each Rule 23 requirement has been met. See Teamsters Local 445, 546 F.3d at 202-04 (quoting In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006)) (internal quotation marks omitted). Courts in this Circuit have consistently denied class certification motions where the party seeking certification failed to present sufficient evidence as to one or more Rule 23 elements. See, e.g., Myers v. Hertz Corp., 624 F.3d 537, 548 (2d Cir. 2010) (affirming the district court's denial of a motion for class certification on the basis that "the evidence put forward by the plaintiffs was insufficient to carry their burden to establish by a preponderance that common questions would predominate over individual ones"); New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Trust, 477 F. App'x 809, 813 (2d Cir. 2012) (summary order) (affirming a denial of class certification for failure to meet the predominance requirement where, inter alia, defendants' evidence "indicated that individual knowledge inquiries might be necessary" and "[t]he court had a limited record without the benefit of discovery of absent potential class members' records"). The district court's "obligation to make a determination that every Rule 23 requirement is met before certifying a class" is not lessened "just because of some or even full overlap of that requirement with a merits issue." In re Initial Pub. Offerings Sec. Litig., 471 F.3d at 41.

B.   Montreal Convention

The Montreal Convention—a multilateral treaty to which the United States and Guyana are parties—establishes an exclusive liability regime for damages claims against international air carriers and their agents.  See Convention art. 29 ("In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights."); see also El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 174-75 (1999).

Article 19 of the Montreal Convention provides that:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo.  Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Convention art. 19.  Measures taken to rebook or otherwise accommodate passengers experiencing delay—as well as measures taken to prevent the original delay-causing events—are relevant to determining liability under Article 19.  See Cohen v. Delta Air Lines, Inc., 751 F. Supp. 2d 677, 678-79, 680 (S.D.N.Y. 2010) (considering Delta's efforts to rebook); Helge Mgmt., Inc. v. Delta Air Lines, Inc., No. CIV.A. 11-10299-RBC, 2012 WL 2990728, at *4-6 (D. Mass. July 19, 2012) (same).  "In order to satisfy the standard of undertaking reasonable measures, the defendant carrier need only show that it took 'all precautions that in sum are

10

appropriate to the risk, _i.e._, measures reasonably available to defendant and reasonably calculated, in cumulation, to prevent the subject loss.'" Helge, 2012 WL 2990728, at *4 (citation and internal quotation marks omitted).

Article 22 provides that "[i]n the case of damage caused by delay as specified in Article 19 in the carriage of persons, the liability of the carrier for each passenger is limited to 4[,]150 Special Drawing Rights ['SDR']." Id. art. 22(1).[4]  However, this cap on damages is subject to a "willful misconduct" exception: it does not apply if "the damage resulted from an act or omission of the carrier . . . done with intent to cause damage or recklessly and with knowledge that damage would probably result."  Id. art. 22(5).  "Courts in the Second Circuit have found that Article 19 only applies to 'economic loss occasioned by delay in transportation.'" Vumbaca v. Terminal One Grp. Ass'n L.P., 859 F. Supp. 2d 343, 367 (E.D.N.Y. 2012) (quoting Sobol v. Cont'l Airlines, No. 05 CV 8992(LBS), 2006 WL 2742051, at *5 (S.D.N.Y. Sept. 26, 2006)); see also Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1170 (11th Cir. 2014) ("The parties agree that Article 19 permits the payment of economic damages but does not contemplate compensation for emotional loss or physical injury." (citation omitted)).

## III.  DISCUSSION

Plaintiffs' papers in support of the instant motion are written without citations to an evidentiary record necessary to support class certification.  They

---

[4] The SDR is an international reserve asset created by the International Monetary Fund ("IMF"). Currently, one SDR is equivalent to $1.388570.  See International Monetary Fund, http://www.imf.org/external/np/fin/data/rms_sdrv.aspx (last visited July 20, 2015).

have not tried—and therefore cannot carry—their burden of demonstrating that the requirements of Rule 23 are satisfied as to either of their two proposed classes.

Plaintiffs' opening brief broadly argues that class certification is warranted because all passengers suffered a common delay—and while damages cannot be determined on a class-wide basis, "individual damages do not defeat class certification under the Montreal Convention." (Pls.' Br. at 10.) As Dynamic points out in its opposition, however—and plaintiffs effectively concede in their reply—the liability determination under the Montreal Convention is fraught with likely individualized issues. Article 19—the sole basis for liability alleged in the Complaint—insulates Dynamic from all liability for flight delays if it proves that it "took all measures that could reasonably be required to avoid the damage" from the delays or that it was impossible for it to take such measures. Convention art. 19. This defense—which Dynamic has asserted in its Answer—requires, <u>inter alia</u>, a passenger-specific inquiry into the reasonableness of Dynamic's accommodations in light of each passenger's individual circumstances and needs. To meet their burden of demonstrating that liability could be resolved on a class-wide basis, plaintiffs needed to have submitted evidence as to the measures that Dynamic took or did not take vis-à-vis the putative class members. Plaintiffs have not done so here.

Plaintiffs do not dispute in their reply that evidence that Dynamic "reasonably accommodated individual passengers in varying manners and methods" could "defeat" class certification. (Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Class Certification ("Pls.' Reply") at 5, ECF No. 37; <u>see also</u> <u>id.</u>

at 4, 6, 8.)  Plaintiffs also do not dispute that they have failed to present any evidence as to Dynamic's accommodations.  Instead, plaintiffs argue that (1) the missing evidence is within Dynamic's control and Dynamic should have produced it in discovery, and (2) the burden is on Dynamic "to plead and prove that it acted differently from passenger to passenger to avoid class certification" because Article 19 is a strict liability provision subject only to affirmative defenses.  (Pls.' Reply at 3; see also id. at 4, 7, 8, 9.)  Notably, plaintiffs' opening does not mention the need for any additional discovery—and plaintiffs waited until the day their reply was due to file a motion to compel discovery.[5]

Plaintiffs are, of course, incorrect as to the legal standard.  They bear the burden of proof on this motion, not defendant.  See Dukes, 131 S. Ct. at 2551; Myers, 624 F.3d at 551.  While Dynamic will ultimately bear the burden of proving the merits of its reasonableness defense, plaintiffs must, at this stage, show that Rule 23 is satisfied.  If plaintiffs wished to litigate this action on a class-wide basis, they had an obligation to assemble a factual record demonstrating that each Rule 23 requirement is met.  Discovery from Dynamic was but one available source of evidence from which such a record could have been developed (though a plainly obvious and basic one); a factual record also could have been developed through other sources, including the named plaintiffs, other putative class members, and third parties.  Notably, plaintiff Moses V. Rambarran asserts in his declaration that he has "received communications from many passengers supporting this class

---

[5] The Court denied the motion to compel discovery with leave to renew for failure to meet-and-confer. Plaintiffs have not refiled the motion to date.

action" (Rambarran Decl. ¶ 9)—suggesting that plaintiffs had access to putative class members.

Plaintiffs' eleventh-hour motion to compel discovery from Dynamic—filed at the same time as their reply brief—does not mitigate or justify plaintiffs' failure to assemble the requisite factual record. This action was filed on December 29, 2014— and discovery has been ongoing since (at least) February 2015, when plaintiffs served discovery requests on Dynamic. (See Pls.' Reply at 4-5.) If plaintiffs sought to rely on discovery from Dynamic, and such discovery were not forthcoming, plaintiffs should have promptly filed a motion to compel—and, if necessary, requested an extension of the deadline to move for class certification. The undersigned's Individual Rules provide for efficient procedures to raise and obtain resolution of discovery and scheduling issues. Plaintiffs did not avail themselves of these procedures—choosing instead to file a motion for class certification with hardly any evidence (and without mentioning the need for any additional discovery in their opening). Now—through their belated motion to compel discovery— plaintiffs are essentially asking this Court to extend all class certification deadlines while they assemble the requisite facts. The Court declines this request.

A.    Numerosity

Class certification is inappropriate unless "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted). Here, Dynamic has conceded

numerosity by acknowledging in its opposition that "there were approximately 236 passengers on the Plaintiffs['] flight." (Defendant Dynamic Airways LLC's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Def.'s Br.") at 9, ECF No. 33.) While Dynamic argues that this "number alone does not establish numerosity" because liability under Article 19 must be determined on a passenger-by-passenger basis (id.), that argument is properly directed to the other Rule 23 requirements, not to numerosity.

B.    Commonality

Under Rule 23(a)(2), plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Dukes, 131 S. Ct. at 2551 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. (citation and internal quotation marks omitted); see also Johnson, 780 F.3d at 137 (a question is common to the class if it is "capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke" (quoting Dukes, 131 S. Ct. at 2551) (internal quotation marks omitted)).

Here, the commonality requirement is met (albeit barely) as to the first proposed class, consisting of the passengers on the December 23, 2014 flight. As to

that proposed class, common questions include the length of the delay, the reasons for the delay, and the nature of the measures, if any, that Dynamic undertook to prevent the delay-causing events.  Importantly, however, several key questions are not susceptible to class-wide answers, including whether Dynamic took all available reasonable measures vis-à-vis each passenger who experienced delay, and whether Dynamic acted with intent to cause damage or recklessly vis-à-vis each such passenger.

As to the second proposed class, there is no basis for a finding[6] of commonality.  That class consists of all persons who booked any New York–Guyana round-trip flight from Dynamic with the outbound trip in December 2014, provided that the flight was delayed at least three hours.  Plaintiffs have not set forth any admissible evidence as to which other New York–Guyana Dynamic flights were delayed, much less the nature of those delays or the measures that Dynamic undertook or could have undertaken to prevent or mitigate the delay-causing events or the damage therefrom.  On this record, the Court finds that the second proposed class does not present questions that are susceptible to class-wide answers.

C.   Typicality

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality "is satisfied when each class member's claim arises from the same course of events and each class member

---

[6] Throughout this decision, the Court uses the word "finding" to mean "ruling" or "determination," mindful of the Second Circuit's discussion of that term in In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24 (2d Cir. 2006).

16

makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) (citations omitted).

The typicality requirement is not satisfied on the record before the Court. Plaintiff Rambarran has represented that following the cancellation of the December 23, 2014 flight, he "received no other communication from Dynamic Airways through [the] date of the filing of the Complaint in this case regarding a refund, alternative transportation from Dynamic Airways, or rebooking with another carrier." (Rambarran Decl. ¶ 4.) Both plaintiffs allege that they "were forced to secure alternate transportation . . . without communication from Dynamic Airways to learn whether Dynamic Airways would transport them to their destination." (Compl. ¶ 48.) However, there is no evidence that the named plaintiffs' experience in this regard is typical of the experiences of other putative class members. The proposed classes may well include passengers who, unlike the named plaintiffs, awaited and received alternate flight arrangements or other accommodations from Dynamic. In fact, the Persaud Declaration states that Dynamic accommodated different passengers in different ways—rebooking some on a Swift Air flight, providing flight vouchers to others who chose to rebook with another carrier, providing hotel vouchers to passengers who were not local to the area, and providing meal coupons, and in some instances, cab fare to certain elderly passengers. (Persaud Decl. ¶¶ 11-13.) Passengers who received such accommodations would be required to make substantially different legal arguments

from the named plaintiffs to overcome the reasonableness defense.  On this record, there is no basis for a finding of typicality.

        D.    <u>Adequacy</u>

To prove that the "representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(b)(4), plaintiffs must demonstrate that (1) the proposed class counsel is "qualified, experienced and able to conduct the litigation," and (2) the proposed class representatives have no interests that are "antagonistic to the interest of other members of the class."  <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, 574 F.3d 29, 35 (2d Cir. 2009) (citation and internal quotation mark omitted).

In marching through the Rule 23 requirements, courts often glance over adequacy; counsel's qualifications and ability to litigate a class action are rarely questioned.  This, however, is one of the atypical cases where the proposed class counsel has demonstrated a lack of ability to litigate on behalf of the class.  Mr. Schutz has not previously been appointed class counsel in any class action and has never prosecuted a case under the Montreal Convention.  (Schutz Decl. ¶ 2(d).) While Mr. Schutz asserts that "this is a relatively straight forward case" (Pls.' Reply at 14) and he does not "anticipate any impediments in representing a class in this litigation" (Schutz Decl. ¶ 2(d)), his conduct of this litigation thus far belies these representations.

Mr. Schutz has persistently misunderstood even the most basic requirements under Rule 23.  He has failed to acknowledge the burden of proof on a class

certification motion (and conflated this burden with the allocation of burdens under the Montreal Convention), failed to submit the minimal factual materials necessary to show that plaintiffs' proposed classes satisfy Rule 23, failed to make a timely motion to compel discovery, and failed to anticipate and timely apply for an extension of the briefing schedule in order to assemble the necessary factual record. Mr. Schutz has also improperly invoked Rule 23(b)(1)(A), which plainly does not apply in the instant case.  Finally, the Court notes that Mr. Schutz has previously represented plaintiff Rambarran in connection with certain disciplinary proceedings, which may give rise to a potential conflict of interest.  In sum, the Court finds that Mr. Schutz is not "qualified, experienced and able" to litigate this case as a class action.

The Court also finds that plaintiff Moses V. Rambarran is not an adequate class representative.  Plaintiff Rambarran is an attorney who has been disbarred from practicing law in New York for having mismanaged client escrow funds—and who has pled guilty to the felony of concealing a person from arrest.  This conduct suggests that plaintiff Rambarran is not "of sufficient moral character to represent a class."  Lapin v. Goldman Sachs & Co., 254 F.R.D. 168, 176 (S.D.N.Y. 2008) (citation and internal quotation mark omitted).

Plaintiffs assert that "to the extent that the Court believes that class counsel with more traditional class counsel experience is necessary, the solution is to require the class representatives to retain a different law firm."  (Pls.' Reply at 15.) As to class representatives, plaintiffs similarly assert that "[i]f the Court deems

additional class representatives necessary, class certification may be deferred pending a determination if additional passengers are willing to act as class representatives." (Pls.' Reply at 11.)[7]  In plaintiffs' view, "Dynamic should not escape class certification because the personal history of the proposed class representatives without providing undersigned counsel the opportunity to invite others to serve." (Id.)

The very fact that counsel made these arguments demonstrates his inadequacy.  Class certification is not for Dynamic to "escape"—it is for plaintiffs to obtain.  Plaintiffs must show at this stage the presence on the field of adequate class counsel; the Court cannot certify a class action with counsel to follow.  Similarly, it was plaintiffs' responsibility to secure adequate class representatives before filing a motion for class certification, not after such motion became fully briefed.

E.      Rule 23(b)(3)

"[T]o certify a class pursuant to Rule 23(b)(3), a plaintiff must establish (1) predominance—'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority—'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Johnson, 780 F.3d at 137 (citing Fed. R. Civ. P. 23(b)(3)).  Plaintiffs have not met their burden of establishing these elements by a preponderance of the evidence.

---

[7] As an alternative, plaintiffs propose appointing "a class consultation committee made up of passengers who are not formally class representatives, but who could fill an advisory role." (Pls.' Reply at 11.)

**Predominance**.  Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Myers, 624 F.3d at 547 (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997)) (internal quotation marks omitted).  The purpose of the predominance requirement is to ensure that a class will be certified only where it would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Id. (quoting Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007)) (internal quotation marks omitted).  "Like the commonality inquiry, a court examining predominance must assess (1) the 'elements of the claims and defenses to be litigated'; and (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief.'" Johnson, 780 F.3d at 138 (citation omitted).  However, the predominance requirement is "more demanding than Rule 23(a)"—and requires a further inquiry "into whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." Id. (citation and internal quotation marks omitted); see also Myers, 624 F.3d at 547 (predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof" (citation and internal quotation marks omitted)).

Plaintiffs argue that the initial delays common to all passengers render the proposed classes sufficiently cohesive to meet the predominance requirement. However, common delay is a needle in a haystack of issues requiring individualized proof. As already discussed, assessing liability under the Montreal Convention requires a passenger-specific inquiry into the reasonableness of the measures that Dynamic took in response to the alleged delays. Assessing damages also requires individualized proof as to each passenger's delay-caused expenses. In fact, plaintiffs concede that "damages for the cost of a meal, a taxi ride, a night in a hotel while waiting, are all individual damages." (Pls.' Br. 8.) Based on the factual record before the Court, including the Persaud Declaration, this case presents a host of passenger-specific, fact-driven questions, such as:

- What measures, if any, did Dynamic implement to avoid or mitigate each passenger's individual damages from the delays?

- What were each passenger's circumstances and needs at the time of the delays (connecting and return flights, reasons for travel, age, health conditions, etc.)?

- Was Dynamic's decision to implement some measures but not others reasonable in light of these circumstances and needs, as well as other relevant factors?[8]

---

[8] A few examples: If Dynamic had the ability to arrange same-day alternative flights only for a small set of passengers, it may have been reasonable to prioritize passengers who were traveling due an emergency—or who were elderly, disabled, or traveling with small children. If Dynamic had a limited number of hotel vouchers, it may have been reasonable to prioritize passengers who were not local to the area. If some passengers chose to rebook with a different airline, it may have been reasonable to provide them with flight vouchers and reserve other accommodations for other passengers.

- If not, did Dynamic act with "intent to cause damage or recklessly and with knowledge that damage would probably result," Convention art. 22?

- What expenses, if any, did each passenger incur as a result of any unreasonable behavior on Dynamic's part?

Based on the Persaud Declaration, these questions must be answered as to each passenger in order to determine: (1) whether the passenger was injured by the delays, (2) whether Dynamic is liable for any such injury, and (3) the amount of damages that each passenger suffered and, in particular, whether the "willful misconduct" exception to the Article 22 damages cap applies. Nothing in the record before the Court contradicts this. Accordingly, the Court finds that individualized issues predominate over any common ones.

**Superiority**. To certify a class under Rule 23(b)(3), a plaintiff must establish that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The factors pertinent to the superiority analysis include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Id.

Plaintiffs' central argument on superiority is that passengers are unlikely to bring individual lawsuits against Dynamic given the difficulty and expense of pursuing a Montreal Convention case in federal court. This argument is not

without merit but it is insufficient to establish superiority here.  The Second Circuit has emphasized that "the issue of manageability of a proposed class action is always a matter of justifiable and serious concern for the trial court and peculiarly within its discretion." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 141 (2d Cir. 2001) (citation and internal quotation marks omitted).  Here, the issue of manageability is of paramount concern: plaintiffs have not presented any evidence indicating that this class action, if certified, would not disintegrate into a series of mini-trials regarding the reasonableness of Dynamic's accommodations vis-à-vis each passenger and each passenger's individual damages.  On the record before it, the Court finds that the superiority requirement is not satisfied.

    F.    Rule 23(b)(1)(A)

    In addition to Rule 23(b)(3), plaintiffs cite Rule 23(b)(1)(A)—plainly incorrectly.

    Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners).'" Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997) (citation omitted).

    Courts in this Circuit have repeatedly recognized that certification under Rule 23(b)(1)(A) is limited to claims for equitable relief. Toney-Dick v. Doar, No. 12 CIV. 9162 KBF, 2013 WL 5295221, at *4 (S.D.N.Y. Sept. 16, 2013).  Here, plaintiffs are seeking monetary damages—for conduct which occurred wholly in the past.

Certification under Rule 23(b)(1)(A) is thus unavailable.  See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., No. CV-04-2195 (CPS), 2006 WL 941765, at *6 (E.D.N.Y. Apr. 12, 2006) (observing that many courts have held that Rule 23(b)(1)(A) does not apply to actions seeking compensatory damages out of "the concern that if compensatory damage actions can be certified under Rule 23(b)(1)(A), then all actions could be certified under the section, thereby making the other sub-sections of Rule 23 meaningless, particularly Rule 23(b)(3)" (citation and internal quotation mark omitted)).

Moreover, even if (b)(1)(A) certification were available, there is no statutory or practical obligation to treat putative class members alike.  The very basis for recovery here—Article 19—anticipates variability by relieving an air carrier from liability if it proves that it took "all measures that could reasonably be required to avoid the damage" or that it was impossible to take such measures.  Convention art. 19.  This reasonableness standard forecloses a requirement that all passengers be treated alike and eliminates any risk that allowing putative class members to pursue their own separate damages actions against Dynamic would establish "incompatible standards of conduct."  There is thus no basis for certification under Rule 23(b)(1)(A).

IV.     CONCLUSION

For the reasons set forth above, plaintiffs' motion for class certification is

DENIED.  The Clerk of Court is directed to terminate the motion at ECF No. 27.

SO ORDERED.

Dated:      New York, New York
            July 27, 2015

_____
            KATHERINE B. FORREST
            United States District Judge

26